David C. Bratz, ABA #0502004
Le Gros Buchanan & Paul
4025 Delridge Way SW, Suite 500
Seattle, WA 98106
Phone: 206-623-4990
Facsimile: 206-467-4828
dbratz@legros.com
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| ARCTIC SABLEFISH, LLC,<br><br>　　　　Plaintiff,<br><br>　　　　　　v.<br><br>JASON KOONTZ,<br><br>　　　　Defendant. | IN ADMIRALTY AND AT LAW<br><br>Case No.: _____<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

Plaintiff Arctic Sablefish, LLC alleges as follows:

## I.　　**PARTIES**

1.　　Plaintiff Arctic Sablefish, LLC ("Plaintiff") is an Alaska limited liability company with its principal place of business in Anchorage, Alaska. Plaintiff owns and operates a fishing and salmon tendering vessel, F/V ALEUTIAN SABLE, which vessel has operated exclusively in state of Alaska waters or federal waters off the coast of Alaska for over five years.

2.　　Defendant Jason Koontz ("Defendant") is an individual believed to be now residing in Kualapuu, Hawaii, but who resided most of his adult life in Alaska, identified an Alaska mailing address (Petersburg) during his employment with Plaintiff,

and has continued to maintain a presence in Alaska, including, until recently, representation by Alaska counsel with respect to this matter.

//

## II. JURISDICTION AND VENUE

3. This is an action within the admiralty jurisdiction of this Court under 28 U.S.C. § 1333. The claims alleged in the action are admiralty and maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

4. This is also an action for declaratory judgment pursuant to 28 U.S.C. § 2201, brought for the purpose of determining an actual controversy between the parties, as more fully set forth below.

5. Venue is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. Venue is also proper pursuant to a contractual venue clause which Defendant told Plaintiff's agents that he signed, then misplaced, and is now estopped from contesting.

## III. FACTUAL BACKGROUND

### A. *Defendant's Employment with Plaintiff*

6. In January 2018, Plaintiff employed Defendant to serve in various roles related to the F/V ALEUTIAN SABLE ("the Vessel"). While employed as such, Defendant's duties related to the Vessel included safety management, shipyard work/logistics, and occasional service as acting mate and/or captain. At all material times, Plaintiff owned and operated the Vessel, and was the employer of her crew.

7. As part of his employment with Plaintiff, Defendant was required to obtain signed crew contracts and health questionnaires from all crewmembers, including

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

himself. Defendant failed to provide Plaintiff with a signed crew contract for himself, and also failed to complete a health questionnaire. In September 2018, at the start of a new fishing season, Defendant was again required to obtain signed crew contracts and health questionnaires. He again failed to provide Plaintiff with a signed crew contract and completed health questionnaire for himself.

8. The crew contract form on which Defendant obtained signatures from other crew, but failed to provide a signed version for himself, contained a venue clause which provided that any lawsuit arising from or related to Crewmember's Contract of Employment or any injury or condition arising from or related to crewmember's employment with Vessel Owner shall be filed at Municipality of Anchorage, State of Alaska, and any such claim or suit shall be governed by the federal maritime law of the United States. Defendant had a duty to provide Plaintiff with a signed version of said contract. He advised Plaintiff's agents that he had signed said contract related to the fishing season starting in September 2018, but misplaced his signed contract before he could deliver it to Plaintiff. The parties are bound by the venue provision in the Crewmember's Contract for Employment which Defendant admittedly signed. Defendant is estopped to deny this contractual provision.

**B.**   *Defendant's Alleged Injuries*

9. On or about September 4, 2018, the Vessel was moored at a dock in Dutch Harbor, Alaska. Defendant and additional employees of Plaintiff were performing work on the Vessel. Defendant and the Vessel's captain began working on the refrigeration system. Both were wearing protective masks. Shortly after the work began, a sudden release of ammonia occurred.

COMPLAINT FOR DECLARATORY RELIEF – Page 3 of 10
Case No. _____
{29056-00517834;1}

10. Defendant immediately exited the area of his own volition, while the captain briefly attempted to rectify the situation. Defendant had to travel only about ten feet to exit the area where the ammonia release occurred, which took no more than three to five seconds. He never lost consciousness.

11. Upon exiting the area, however, Defendant had pushed his protective mask up on top of his head. Other crewmembers immediately began spraying Defendant and the Vessel's captain down with water, after which they were promptly transported to the Iliuliuk Clinic in Dutch Harbor for evaluation.

12. At the Iliuliuk Clinic, Defendant complained of shortness of breath, burns to his neck and right arm, and scrotal pain. Defendant's oxygen saturation level was normal at 98%, and examining medical providers noted that "serial lung exams remained clear without wheezing or stridor." His primary injury was a superficial chemical burn of the right upper arm, which he was told to keep clean and take Tylenol for pain.

13. Defendant returned to the Iliuliuk Clinic on September 8, 2018, at which time he had normal breathing, no wheezing, and no rales. His chest x-rays were normal. Defendant thereafter returned to work on a Bering Sea fishing voyage on the Vessel, and thereafter served on the voyage as relief captain.

C. *Defendant's Medical Treatment*

14. Since September 4, 2018, Defendant has sought a wide variety of multidisciplinary medical and psychological treatment from at least eight different health care providers, including multiple pulmonologists, neurologists, and a neuropsychologist, for a variety of conditions he claims are related to the alleged incident on the Vessel. Treating health care providers have noted that Defendant's effort on cognitive testing was

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

variable and that physical symptom complaints are out of proportion to objective findings, and that objective diagnostic testing has been negative.

15. Defendant has reported to various health-care providers that he has been testing his oxygen saturation levels at home, and finding abnormal levels. However, he has consistently tested within the normal range for oxygen saturation levels at every appointment in a clinical setting (approximately 25 different occasions to date).

16. Health care providers have noted that Defendant's alleged symptoms are out of proportion with objective findings. For instance, on October 23, 2018, pulmonologist Anthony Gerbino, M.D., noted that Defendant's symptoms were "out of proportion to spirometric findings."

17. Health care providers have noted variable and inconsistent effort by Defendant relating to his participation in diagnostic testing. For example, Defendant was referred for a neuropsychological examination with Laila Spina, Ph.D., on April 11, 2019. Dr. Spina noted that Defendant put forth "variable effort over the course of the evaluation," which meant that the results "may not be fully representative of his cognitive abilities."

18. Over time, Defendant has changed and embellished the nature and scope of the alleged incident dramatically when reporting to health care providers. For instance, at his first visit to the Iliuliuk Clinic immediately after the alleged incident, he reported no loss of consciousness. On October 22, 2018, he reported to a provider at the PolyClinic in Hawaii that he lost consciousness and had to be assisted out of the area where the leak allegedly occurred. Approximately six months later, at the evaluation

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

with Dr. Spina, Defendant reported that he "passed out" for "about 10 minutes," and had to be "woken up" by crewmembers pouring water on his face.

### D. *Defendant Willfully Concealed Previous Injuries and Medical Conditions*

19. Investigation including review of Defendant's post-incident medical records has revealed that Defendant experienced extensive pre-incident injuries and illnesses, including anxiety, depression, alcohol abuse, insomnia, anger management, post-traumatic stress disorder ("PTSD"), history of abuse/trauma, left middle finger injury, multiple head injuries/ concussion(s), punctured lung, broken ribs, orbital fracture, and medical discharge from military service due to injuries. Said investigation also revealed that Defendant prior to the alleged incident of September 4, 2018, and at or near the time he commenced employment with Plaintiff, and/or during said employment, was prescribed and taking various medications including without limitation psychotropic, anti-anxiety, anti-depressant, and narcotic pain medications. Defendant continued to receive prescriptions for the same or similar medications following the September 4, 2018 incident, and has claimed entitlement to payment for same from Plaintiff as "cure" under the general maritime law. Defendant's repeated failures to provide Plaintiff with the requisite completed health questionnaire(s) constituted a willful attempt to conceal his extensive pre-incident medical issues from Plaintiff.

### E. *Defendant's Benefits*

20. Defendant requested federal maritime benefits related to the alleged September 4, 2018 incident. Plaintiff has since provided defendant with federal maritime

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

benefits, including maintenance and cure, without prejudice to its position that Defendant is not entitled to such benefits.

21. Defendant returned to work and completed a fishing voyage after the alleged incident. He was paid for that work. He is not entitled to unearned wages, as he was not under contract to complete any additional work for Plaintiff.

22. Plaintiff has paid for all of Defendant's medical treatment which he claims is related to the alleged incident, on a without prejudice basis from the date of the alleged incident to present.

23. Plaintiff has paid Defendant's maintenance at the rate of $90 per day since the date of the alleged incident to present, on a without prejudice basis.

F. *Independent Medical Records Reviews*

24. On or about May 22, 2019, pulmonologist Stephen Nathan, M.D., conducted a review of Defendant's records. Dr. Nathan noted that while Defendant initially showed some mild airway obstruction, all objective testing has been normal. He concluded that Defendant's subjective complaints have been "out of proportion to the objective data." He agreed with Defendant's treating provider Dr. Crawley that evaluation of Defendant at National Jewish Health ("NJH") may be appropriate, but noted that due to Defendant's extensive pre-incident medical history, the NJH providers should receive a complete copy of all pre- and post-incident medical records to ensure a comprehensive evaluation. Moreover, Dr. Nathan recommended a full psychological evaluation given Defendant's extensive history of mental illness, which Dr. Nathan concluded may explain Defendant's heightened symptomatology.

25. On or about June 3, 2019, neuropsychologist Kristoffer Rhoads, Ph.D., reviewed Defendant's available medical records. Dr. Rhoads noted that Defendant's present alleged symptoms are "significantly complicated by pre-existing psychiatric factors, with prior diagnoses and treatment related to depression, anxiety, post-traumatic stress disorder, [and] alcohol abuse." He further noted Dr. Spina's references to Defendant's "variable effort" during the neuro-psychological evaluation, along with possible indications of somatization, which were likely to "influence his physical symptoms and presentation." Dr. Rhoads requested to see Dr. Spina's raw testing data, and also concurred with Dr. Nathan that a full psychiatric evaluation is warranted.

26. Plaintiff has on multiple occasions requested that Defendant identify his prior physicians, including those who treated him for conditions and prescribed medications identified in paragraphs 19, 24, and 25, *supra*, and provide records from said physicians and/or access to same. Defendant has ignored or denied said requests. He has not identified prior physicians, nor produced their records, nor provided Plaintiff access to same. Review of said records is essential for Plaintiff, and this Court, to determine Plaintiff's federal maritime obligations to Defendant, if any. Review of said records is also essential for any evaluating health care provider, including NJH, to accurately assess Defendant's current condition, and whether and to what extent said condition relates to Defendant's service on the Vessel.

## IV. FIRST CAUSE OF ACTION

**Declaratory Judgment on Plaintiff's
Maintenance and Cure Obligations**

COMPLAINT FOR DECLARATORY RELIEF – Page 8 of 10
Case No. _____
{29056-00517834;1}

27. A controversy exists concerning whether Plaintiff owed Defendant maintenance and cure, and whether Plaintiff continues to owe Defendant any additional maintenance and cure benefits under the general maritime law. Plaintiff alleges that these benefits were not owed and/or are no longer owed to Defendant, and seeks this Court's declaratory judgment affirming same.

28. The only conditions that manifested during Defendant's service aboard the Vessel were superficial chemical burns on his arm, sore throat, and mild airway obstruction. These conditions have reached MMI and therefore Plaintiff's maintenance and cure obligations to Defendant, to the extent they existed in the first place, have ended.

29. Defendant's willful concealment of prior material medical conditions bar any entitlement to federal maritime benefits from Plaintiff.

30. Defendant's remaining alleged medical conditions, including but not limited to pulmonary issues, cognitive deficits, and psychological conditions, did not manifest in service of the Vessel and were not exacerbated, aggravated, or made worse by the subject incident. Therefore, Plaintiff has no maintenance and cure obligation with respect to those conditions.

V. **PRAYER FOR RELIEF**

1. Enter judgment in favor of Plaintiff declaring that Defendant was not entitled to, or is not entitled to additional maintenance and cure benefits from Plaintiff related to the alleged incident of September 4, 2018, or any other circumstance or event or manifestation in his service of the Vessel.

COMPLAINT FOR DECLARATORY RELIEF – Page 9 of 10
Case No. _____
{29056-00517834;1}

Case 3:19-cv-00180-HRH   Document 1   Filed 06/25/19   Page 9 of 10

2. Enter judgment in favor of Plaintiff declaring that Plaintiff has met its obligations to Defendant by providing maintenance and cure benefits to date.

3. Enter judgment in favor of Plaintiff that Defendant is not owed any additional maintenance and cure benefits.

4. Award Plaintiff such other and further relief as the Court deems just and equitable.

DATED this 25 day of June, 2019.

LE GROS, BUCHANAN & PAUL

By: _____
David C. Bratz, ABA #0502004
Attorney for Defendants
4025 Delridge Way SW, Suite 500
Seattle, WA 98106
Telephone: 206-467-4010
Facsimile: 206-467-4828
dbratz@legros.com